UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOHN BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00375-JMS-MJD |
| | ) | |
| CORIZON, MEDICAL SERVICES, | ) | |
| WEXFORD, MEDICAL SERVICES, | ) | |
| NEIL MARTIN MD, | ) | |
| SAMUEL BYRD Dr. MD, | ) | |
| MARY CHAVEZ Dr. MD, | ) | |
| KIM HOBSON RN, | ) | |
| REGINA ROBINSON RN, | ) | |
| B. RIGGS RN, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Motion for Summary Judgment, Directing Entry of Final Judgment, and Denying as Moot Plaintiff's Motion for Preliminary Injunction and Motion for Judicial Notice**

Plaintiff John Bell, an inmate at the Wabash Valley Correctional Facility (WVCF), brings this action pursuant to 42 U.S.C. § 1983. Mr. Bell alleges that the defendants violated his Eighth Amendment rights through their deliberate indifference to his serious medical needs and committed malpractice under state law.

The defendants move for summary judgment on Mr. Bell's claims arguing that he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA) before filing this lawsuit. For the following reasons, the motion for summary judgment, dkt. [25], is **granted**. Mr. Bell's motion for preliminary injunction, dkt. [30], and motion for judicial notice, dkt. [37], are **denied as moot** as the action is dismissed without prejudice.

## I. Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324. Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).

## II. Statement of Facts

Mr. Bell is an inmate at WVCF and has been at all times relevant to his claims in this case. The Indiana Department of Correction (IDOC) has an Offender Grievance Process – IDOC Policy and Administrative Procedure 00-02-301, Offender Grievance Process – which is intended to permit inmates to resolve concerns and complaints relating to their conditions of confinement prior to filing suit in court. All offenders are made aware of the offender grievance process during orientation and a copy of the grievance process is available in the law libraries.

Under the IDOC offender grievance program, offenders can grieve actions of individual staff, including claims that facility staff was deliberately indifferent or that staff retaliated against

them. Pursuant to the Grievance Process, an inmate must first attempt to informally resolve his complaint. Within five business days of the date of the incident, the offender shall contact his Casework Manager, his Caseworker, or other Unit Team staff member to request a State Form 52897 Offender Complaint – Informal Process Level. The offender is then required to attempt to resolve his complaint informally by contacting an appropriate staff member within five business days of receiving the Offender Complaint form.

If the informal complaint process does not resolve the inmate's issue within ten business days, he may then submit an "Offender Grievance" to the Executive Assistant of Grievance / Grievance Specialist, which must be submitted within five business days of the date a staff member informs the offender there will be no informal resolution to the grievance, within five business days of the date the offender refuses the informal resolution offered by staff, or the tenth business day after the offender first seeks an informal resolution from staff. The grievance submitted by the offender is screened by the Grievance Specialist to determine whether the submitted grievance meets the requirements for a formal grievance as set forth in the IDOC grievance policy. If it is determined that the grievance does not meet the requirements of the policy, the grievance is returned to the offender along with a state form 45475 "Return of Grievance." The Return of Grievance form shall indicate the reason for the return. If an adequate grievance form is received, the Grievance Specialist enters the grievance, assigns the grievance a case number, and provides a receipt for the grievance to the offender.

If the offender does not receive either a return of grievance form or a grievance receipt within seven business days after submitting a grievance, the offender must immediately notify the Grievance Specialist of the missing grievance, retaining a copy of the notice, so that the Grievance Specialist can investigate the matter and respond to the offender. The Grievance Specialist may

accept a late grievance, or one that does not conform to the requirements set forth in the IDOC grievance policy, if an offender demonstrates good cause.

If the grievance is not resolved in a manner that satisfies the offender, or if he did not receive a response to the grievance within twenty working days of submission, the offender may file an appeal to the Department of Offender Grievance Management at IDOC's Central Office.

The records maintained by IDOC and WVCF document whether an offender attempted an informal grievance and filed a formal grievance or grievance appeal.

On May 1, 2017, Mr. Bell filed an informal Offender Complaint, alleging that on October 27, 2016, Sergeant Ledford took his prescribed knee brace during a cell inspection, and sent it over to medical. *See* dkt. 27-1 at 37. Mr. Bell further explains that on November 16, 2016, Dr. Chavez sent emails to several departments within medical to (1) locate the knee brace; (2) determine the type of support that was ordered; and (3) order further appropriate support for him. *See id*. Nurse Robinson responded that a knee brace was given to him by medical on November 23, 2016, and that the confiscation of his property was not a medical issue, and the medical department did not have his knee brace. *Id.*

Thereafter, on May 15, 2017, Mr. Bell filed a formal Offender Grievance that was returned as untimely. Dkt. 27-1 at 35. In his formal Offender Grievance, Mr. Bell again raised the issue that on October 27, 2016, Sergeant Ledford and other officers confiscated his leg brace and allegedly brought it to medical. He further explains that in a November 2016 visit, Dr. Chavez attempted to locate the leg brace, to determine the type of support ordered, and order further appropriate support. He further alleges that Nurse Robinson told him that they had to destroy the leg brace, and gave him an ineffective knee brace instead.

Mr. Bell did not file an appeal of his formal Offender Grievance, but did request an interview with the Grievance Office. Dkt. 27-1 at 38-39.

On May 24, 2017, Mr. Bell filed a formal Offender Grievance, Grievance # 96607, alleging that on April 1, 2017, during a medical visit regarding a bedsore, Nurse Riggs violated his privacy and humiliated him when she had him lower his jumpsuit in front of Nurse Wright and three other inmates. Dkt. 27-1 at 41. He did not file an appeal of this grievance to the Department Offender Grievance Manager at the IDOC's Central Office. Dkt. 27-1 at 6.

### III. Discussion

The defendants argue that Mr. Bell failed to exhaust his available administrative remedies as required by the PLRA with respect to his claims against them. Mr. Bell argues that his grievance was not untimely because the issue with his missing leg brace is ongoing. He further argues that the Grievance Specialist at WVCF intentionally stalls the grievance process in order to render grievances untimely, thereby corrupting the grievance process.

**A.      PLRA Exhaustion Standard**

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). Strict compliance is required with respect to exhaustion, and a

5

prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). The PLRA's exhaustion requirement is not subject to either waiver by a court or futility or inadequacy exceptions. *Booth v. Churner,* 532 U.S. 731, 741, n.6 (2001); *McCarthy v. Madigan,* 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required.").

**B.     Claims that Are Not Exhausted**

On September 15, 2017, the Court screened Mr. Bell's complaint and allowed the following claims to proceed:

1. Corizon and Wexford are liable for understaffing on-site physicians at Wabash Valley. In September 2015, Corizon had only one doctor on site to care for 2000 inmates. As a result, on December 16, 2016, February 13, 2017, and in April 2017, Mr. Bell fell and injured himself but was not allowed to see a doctor.

2. Dr. Neil Martin, Dr. Mary Chavez and Dr. Byrd 1) failed to refer to written medical records when electronic records were not available in the computer and 2) denied Mr. Bell a full length leg hinged brace to treat his left leg muscle atrophy despite his complaints of pain. In addition, Dr. Neil Martin gave Mr. Bell a full length lockable leg brace, but no wheelchair for mobilization. Dr. Neil Martin further failed to order physical therapy, a replacement leg brace, or any other treatment for pain.

3. Nurse R. Robinson took and lost Mr. Bell's full-length leg brace. In addition, she specifically stated that the medical department did not have the leg brace after she located the leg brace and showed it to Mr. Bell in the medical department.

4. Nurse Riggs and Nurse Hobson allegedly refused to schedule Mr. Bell to see a doctor based on his submission of a health care requests in a timely manner. In addition in March and April of 2017, Mr. Bell was seen by Nurse Riggs for his complaints of a bedsore and she failed to provide any treatment.

*See* Dkt. 9.

While at WVCF, Mr. Bell submitted two grievances related to his medical care. The first, which was returned as untimely, related to the confiscation of his knee brace on October 27, 2016 and an investigation by Dr. Chavez on November 16, 2016 related to the knee brace. The second

grievance related to an apparent violation of his privacy when he was ordered to lower his jumpsuit in front of others when Nurse Riggs was investigating his bedsore.

The undisputed record reflects that Mr. Bell never filed a grievance regarding Corizon and Wexford's alleged understaffing of on-site physicians at Wabash Valley. The record further reflects that Mr. Bell never filed a grievance regarding Dr. Martin, Dr. Chavez, and Dr. Byrd's alleged failure to refer to medical records, denial of a full-length leg hinged brace to treat his left leg muscle atrophy, or failure to order a wheelchair, physical therapy, replacement leg brace, or any other treatment for his pain. The record also reflects that Mr. Bell never filed a grievance regarding Nurse Riggs and Nurse Hobson's apparent refusal to schedule Mr. Bell to see a doctor in a timely manner.

To the extent Grievance #96607 appropriately identified Mr. Bell's claim that Nurse Riggs failed to provide any treatment for his complaints of a bedsore, Mr. Bell failed to file an appeal of this grievance to the Department Offender Grievance Manager at IDOC's Central Office.

Finally, as to Mr. Bell's claim regarding Nurse Robinson taking and losing his full-length leg brace, Mr. Bell failed to raise these allegations in his informal Offender Complaint of May 1, 2017. Moreover, Mr. Bell's formal Offender Complaint of May 15, 2017, which references Nurse Robinson and the full-length leg brace, was rejected as untimely. Although Mr. Bell argues that his May 15, 2017 is timely because it relates to an ongoing medical problem, the claim and incident relating to Nurse Robinson allegedly taking and losing Mr. Bell's leg brace occurred on or around November 2016. Thus, Mr. Bell failed to properly file an informal grievance relating to Nurse Robinson and failed to timely file a grievance.

Defendants have therefore met their burden of showing that Mr. Bell failed to exhaust his administrative remedies before filing this lawsuit as to all of the claims in this action. The

consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that the action should not have been brought and must now be **dismissed without prejudice**. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (holding that "all dismissals under § 1997e(a) should be without prejudice.").

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment, dkt. [25], is **granted.** Mr. Bell's motion for preliminary injunction, dkt. [30], and motion for judicial notice, dkt. [37], are **denied as moot** as the action is dismissed without prejudice. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 3/22/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JOHN BELL
883308
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Britney Jade McMahan
BLEEKE DILLON CRANDALL ATTORNEYS
britney@bleekedilloncrandall.com

8